**Charles COOPER, Plaintiff,**

v.

**George SUMNER, et al., Defendants.**

**No. CV–N–87–293–ECR.**

United States District Court,
D. Nevada.

Oct. 14, 1987.

Charles Cooper, in pro per.

No appearance for defendants.

## MEMORANDUM DECISION AND ORDER

EDWARD C. REED, Jr., Chief Judge.

This is a pro se civil rights action by Charles Cooper, a prisoner of the State of Nevada incarcerated at Arizona State Prison Complex pursuant to the Western Interstate Corrections Compact (WICC). The case was referred to United States Magistrate Phyllis Halsey Atkins pursuant to 28 U.S.C. § 636(b)(1)(B). The complaint was filed on May 29, 1987, after the Magistrate granted plaintiff leave to proceed in forma pauperis. Also, on that day, the Magistrate issued her Report and Recommendation concerning this case. Magistrate Atkins recommended that this Court enter an order dismissing the plaintiff's complaint without prejudice and without service on the defendants for the reason that it is frivolous within the meaning of 28 U.S.C. § 1915(d) in that it fails to set forth a factual or legal basis for the alleged constitutional deprivation. *Franklin v. Murphy*, 745 F.2d 1221 (9th Cir.1984). The Magistrate allowed plaintiff ten days to file an amended complaint, however, the plaintiff has opted not to amend. The Magistrate also informed the plaintiff that, pursuant to 28 U.S.C. § 636(b)(1), he could file specific written objections to the Report and Recommendation within ten days of its issuance. The plaintiff has not filed any objections.

The Court's review of the issues presented is *de novo*. 28 U.S.C. § 636(b)(1).

Plaintiff alleges in Count I that: (1) on February 3, 1983, he was transferred from the physical custody of the Nevada Department of Prisons (NDOP) to the Arizona Department of Corrections (ADOC) pursuant to the WICC; (2) he was transferred against his will, without notice or a statement of reasons, without an opportunity to be heard or to contact legal assistance, and was not given a "proper" classification hearing; (3) as of January 31, 1987, he had not received a copy of the recommended duration of his transfer or NDOP Director Sumner's decision concerning the transfer pursuant to NRS § 215A(V)(b)(3)[sic]; (4) he has not received provisions for his retaking as set forth in Arizona Revised Statutes § 31–471, Art. II; (5) the NDOP and ADOC conspired to transfer plaintiff to prevent him from following through on his post-conviction relief which the Nevada Supreme Court had recently remanded to Judge Fondi's court for a new hearing at the time of his transfer. Further, the petition was dismissed because plaintiff was unable to appear in court due to his placement in Arizona; (6) he has been denied a grievance hearing with NDOP officials regarding the practices of the ADOC and he has no access to lawbooks containing Nevada statutes or case law.

Plaintiff alleges in Count II that: (1) on October 10, 1985, he was locked up in his cell for an investigation and was given a disciplinary write-up the first week of November, 1985; (2) from the second week of November, 1985, through the first week of February, 1986, he was placed in an iso-

lation cell and was only permitted three fifteen-minute showers per week and three one-hour exercise periods in a 2 x 4 foot area adjoining his cell; (3) the exercise area lacked sunlight or fresh air; (4) in the second week of March, 1986, an ADOC disciplinary committee found him not guilty; (5) the disciplinary proceedings were conducted under the procedures of the ADOC, not those of the NDOP, in violation of the WICC; (6) since being transferred to Arizona, plaintiff has twice been taken before the Nevada Parole Board "in abstencia" [sic] a "clear liberty interest violation;" and (7) since being found not guilty in his disciplinary hearing, plaintiff has been housed in a unit classified as general population but which in fact is a segregated unit, thereby denying plaintiff the opportunity to secure a prison job or participate in job training, in violation of his "direct liberty interest."

Plaintiff claims the above facts constitute a violation of his rights under the First, Fifth, Eighth and Fourteenth Amendments of the United States Constitution, the WICC (NRS §§ 215.020–215.060) and the NDOP Administrative Regulations. He also alleges a cause of action for breach of the WICC. Further, plaintiff claims his cause of action arises under 42 U.S.C. § 1997(d)[sic], in addition to § 1983. He names as defendants both Nevada and Arizona prison officials and seeks injunctive and declaratory relief, compensatory, punitive and special damages, costs of the action and attorney's fees.

■ A court may dismiss a frivolous action filed in forma pauperis before service of process, *Franklin, supra* at 1225–27; *Broughton v. Cutter Laboratories*, 622 F.2d 458, 469 (9th Cir.1980). In order to determine whether an action is frivolous, the Court must assess the substance of the claims presented to ascertain whether there is a constitutional dimension to the asserted wrongs, however inartfully pleaded. *Franklin, supra* at 1227–28.

■ Plaintiff's claims arising out of his initial transfer and alleged lack of notice and a hearing must be dismissed as frivolous under *Franklin v. Murphy*, 745 F.2d 1221 (9th Cir.1984). An action may be dismissed under 28 U.S.C. § 1915(d), before service on the defendants when a defense is complete and obvious from the face of the pleadings. *Franklin, supra* at 1228.

■ Here, plaintiff's claims regarding his transfer are barred by the statute of limitations. In *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), the Supreme Court held that § 1983 actions claims are to be characterized as personal injury actions for statute of limitations purposes. The Court went on to hold that the applicable state statute should apply. *Id.*

In Nevada, the statute of limitations for personal injury actions (and thus for § 1983 actions) is two years. NRS § 11.190(4)(e). However, at the time plaintiff's cause of action accrued, the applicable statute of limitations for § 1983 actions brought in Nevada was three years. *Mason v. Schaub,* 564 F.2d 308 (9th Cir.1977). The Ninth Circuit Court of Appeals has held that *Wilson* should not be applied retroactively where such application would shorten the limitations period. *Gibson v. United States,* 781 F.2d 1334, 1339–40 (9th Cir.1986). Therefore, here, where the retroactive application of *Wilson* would shorten the limitations period, plaintiff's claims are subject to the three-year limitations period set forth in NRS § 11.190(3).

Plaintiff filed his complaint with the Clerk of the Court on February 9, 1987. His transfer took place on February 9, 1983. Therefore, the alleged violations plaintiff complains of relating to his transfer must have occurred within 30 days either way of February 3, 1983. Applying the three-year limitation period in effect at the time of the alleged violations, plaintiff's claims relating to his transfer appear to be time-barred.

The Magistrate in her Report and Recommendation noted that plaintiff's claims were subject to a two-year statute of limitations. This analysis, however, overlooked the Ninth Circuit's decision in *Gibson* regarding the retroactive application of *Wilson v. Garcia, supra.* Although plaintiff's claims will probably be time-barred

regardless of whether or not *Wilson* is applied retroactively, he should be permitted to amend his complaint to show that his claims are not barred under the three-year limitations period in effect when his claims arose.

Plaintiff's claims relating to his inability to pursue his state post-conviction relief because of his transfer, and his lack of access to Nevada statutes and case law may be cognizable under § 1983. Plaintiff alleges that his state court petition for post-conviction relief, which the Nevada Supreme Court had remanded to the state district court, was dismissed because plaintiff was unable to appear because of his transfer. However, plaintiff fails to note the date of the dismissal or include the terms of the district court's dismissal order.

If the dismissal occurred after February 9, 1984, and was in fact for the reasons stated in the complaint, plaintiff may state a § 1983 claim based on lack of access to the courts. Plaintiff should be permitted to amend his complaint to set forth facts sufficient to show his transfer prevented him from pursuing his post-conviction relief and that his claim is not time-barred.

Plaintiff also complains that he has no access to Nevada statutes and case law while incarcerated in Arizona pursuant to the WICC. In *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977) the Supreme Court held that prisoners have a constitutional right of access to the courts which in turn requires prison authorities to provide prisoners with adequate law libraries or assistance from persons trained in law. *Id.; see also Toussaint v. McCarthy*, 801 F.2d 1080, 1108–10 (9th Cir.1986); *Lindquist v. Idaho State Board of Corrections*, 776 F.2d 851, 855 (9th Cir.1985).

In *Rich v. Zitnay*, 644 F.2d 41 (1st Cir. 1981), the court found that Maine state prisoners who were transferred to Leavenworth Federal Prison, where they had no access to Maine law books, stated a claim under § 1983. The court also found that the burden was on Maine officials to demonstrate that the transferred prisoners had adequate legal resources. *Id.* at 43; *see*

*also Blake v. Berman*, 625 F.Supp. 1523, 1525 (D.Mass.1986); *Benjamin v. Potter*, 635 F.Supp. 243, 245 (D.Virgin Islands 1986).

■ Here, plaintiff contends that his lack of access to Nevada statutes and case law has prevented him from following through on seeking post-conviction relief. Because this is a continuing source of harm, it is not barred by the statute of limitations. It therefore appears that plaintiff has stated a viable claim under 42 U.S.C. § 1983 based on lack of access to the courts.

■ Plaintiff's claims concerning provisions of the WICC dealing with notice of the length of his transfer and provisions for his retaking by the NDOP are frivolous under *Franklin* and must be dismissed. These matters, while referred to in the WICC, relate to arrangements between the two contracting states. They do not confer any rights on inmates transferred pursuant to the WICC. NRS § 215.020. Moreover, such a transfer, in and of itself, does not infringe upon or implicate a liberty interest within the ambit of the Due Process Clause of the Fourteenth Amendment of the United States Constitution. *Olim v. Wakinekona*, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *Montanye v. Haymes*, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976). Therefore, because plaintiff's allegations regarding the provisions of the WICC do not rise to the level of a constitutional deprivation, they must be dismissed as frivolous.

■ In Count II of his complaint, plaintiff alleges that in early November, 1985, he was charged with committing a disciplinary infraction and "taken through the due process policies of the ADOC." Plaintiff alleges that this violates the WICC. The WICC provides in part, that when inmates transferred out of state under the WICC are entitled to hearings pursuant to the laws of the sending state (e.g., disciplinary or classification hearings), the governing

law at the hearing shall be that of the sending state. NRS § 215.020, Art. IV(f).

Here, plaintiff fails to allege that the ADOC disciplinary hearing procedures were unconstitutional or infringed upon a protected liberty interest. *Wolff v. McDonnel,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). He also fails to state how he was injured by the application of the ADOC procedures, particularly in light of the fact that he was found not guilty. His claim is therefore frivolous in that it fails to set forth a legal or factual basis for the alleged constitutional deprivation. *Franklin v. Murphy, supra,* at 1227.

However, plaintiff may amend his complaint to state a cause of action under § 1983 by alleging facts sufficient to show that the application of the ADOC procedures infringed a liberty interest resulting in a constitutional deprivation capable of redress under § 1983. It should be noted again, however, that because plaintiff was found not guilty of the disciplinary infraction it will be difficult to show that he was injured. Further, no cases suggest that the ADOC disciplinary procedures are constitutionally infirm.

■ Plaintiff also alleges that he was moved to an "isolation cell" in the second week of November, 1985, and remained there until the first week of February, 1986. He further alleges that he was deprived of sunlight and fresh air during this time.

Although plaintiff does not specifically say so, it is presumed he was segregated pending investigation of the disciplinary charges against him. In *Toussaint v. McCarthy,* 801 F.2d 1080 (9th Cir.1986), the court held that "when prison officials initially determine whether a prisoner is to be segregated for administrative reasons due process only requires the following procedures: prison officials must hold an informal nonadversary hearing within a reasonable time after the prisoner is segregated. The prison officials must inform the prisoner of the charges against the prisoner or their reasons for considering segregation [and] allow the prisoner to present his views." *Id.* at 1100.

In his complaint, plaintiff fails to note whether the above procedures were carried out. Such a failure renders the claim frivolous under *Franklin.* However, plaintiff may amend his complaint to state a § 1983 claim based upon a denial of due process.

■ Plaintiff's Eighth Amendment allegations also fail to set forth a factual or legal basis sufficient to state a § 1983 claim based upon the Eighth Amendment. The Eighth Amendment, applicable to the states through the Fourteenth Amendment, establishes limits that states may impose on prisoners. "The cruel and unusual standard is flexible and dynamic, based on the evolving standards of decency that mark the progress of a maturing society." *Rhodes v. Chapman,* 452 U.S. 337, 345–46, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981). Further, prison conditions must not be "grossly disproportionate to the severity of the crime" nor involve the "wanton and unnecessary infliction of pain." *Id.* at 347, 101 S.Ct. at 2399.

In *Toussaint v. McCarthy,* 597 F.Supp. 1388, 1392 (N.D.Cal.1984) (overruled in part on different grounds *Toussaint v. McCarthy,* 801 F.2d 1080 (9th Cir.1986)) the court noted, "it is settled that prisoners may not be deprived of all exercise, because 'some form of regular outdoor exercise is extremely important to the psychological and physical well-being of the inmates.'" *Id. citing Spain v. Procunier,* 600 F.2d 189, 199 (9th Cir.1979). Here, plaintiff's complaint does not make clear whether the exercise space he was allotted was outside or not. Plaintiff should be permitted an additional opportunity to amend his complaint to set forth facts sufficient to state a claim under § 1983.

■ Plaintiff also complains that he has twice been taken before the Nevada Parole Board, "in abstencia," [sic] since his transfer to the ADOC. He asserts that this constitutes "a clear liberty interest violation."

The possibility of parole creates only a hope, not a liberty interest in parole. *Baumann v. Arizona Dept. of Corrections,* 754 F.2d 841 (9th Cir.1985). Unless a state

statute mandates that parole "shall" be granted "unless" a designated exception applies, no federal due process protected interest arises. *Id.* at 844. Nevada law provides that State Board of Parole Commissioners "may" release a prisoner on parole based upon the balancing of numerous factors. NRS § 213.1099. However, there is no mandatory language requiring the board to release a prisoner if certain conditions are met. While the due process clause protects a prisoner's right to apply for parole, no Nevada law creates a liberty interest in being granted parole or being present at one's parole hearing. *See Kelso v. Armstrong*, 616 F.Supp. 637, 639 (D.Nev.1985). Therefore, plaintiff's claim alleging a Due Process violation based on his not being present at his parole hearing must be dismissed.

■ Plaintiff also complains that after he was found not guilty by the ADOC disciplinary committee, he was moved to the "infamous Henry and Ida run." He asserts that while the ADOC considers this unit to be "General Population," it is in fact totally separate from the "General Population." He further claims that he has no opportunity to work and thus earn good time credits.

This claim is frivolous under *Franklin.* Plaintiff currently earns Statutory Good Time credit. NRS § 209.433(1). Further, there is no protectible liberty interest in earning Work Time credit. Both NRS § 209.433(3) and NDOP Administrative Regulation 714(III) make the granting of Work Time credit discretionary. In sum, Nevada law merely creates a possibility of early release through the earning of Work Time Credit; it does not create a constitutionally protected liberty interest. *See Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1, 8–11, 99 S.Ct. 2100, 2104–06, 60 L.Ed.2d 668 (1979). *Toussaint v. McCarthy*, 801 F.2d 1080, 1095 (9th Cir.1986). Because plaintiff has no constitutionally protected liberty interest in earning Work Time credit his claim must be dismissed as frivolous.

■ Plaintiff also claims that his claim arises under 42 U.S.C. § 1997(d) [sic] and that he has a cause of action for breach of the WICC. Section 1997c provides the Attorney General of the United States with standing to protect institutionalized persons against a pattern of violations of their rights. It does not, however, form the basis for an individual cause of action. Therefore, plaintiff has no cause of action under § 1997c. Further, because plaintiff is not a party to the WICC he has no direct cause of action for a breach of the compact.

IT IS, THEREFORE, HEREBY ORDERED that plaintiff's claims concerning lack of notice regarding the length of his transfer, his inability to appear at his parole hearings, and his claims regarding his good time credits are *DISMISSED* without prejudice as frivolous.

IT IS FURTHER ORDERED as follows:

1. That plaintiff shall have twenty(20) days from the date of this order within which to file an amended complaint:

   (a) to state claims based upon his initial transfer; the dismissal of his petition for post-conviction relief; the use of the ADOC procedures in his disciplinary hearing; and the conditions of his confinement while in segregation;

   (b) to restate the claim based on lack of access to the courts as pled in his complaint;

   (c) deleting the claims dismissed above.

*See* Local Rule 135–2.

2. That if plaintiff chooses not to amend his complaint as set forth herein, the Court will enter its further order that said complaint be served, but that defendants will be directed to respond only to the claim alleging lack of access to the courts.